The next case up is United States v. Windom. It is docket 22-1077. Ms. Hartfield, prepare to hear your argument. Thank you, your honors. Good morning. May it please the court, my name is Lynn Hartfield and I represent the appellant Samuel Windom. The Fourth Amendment confers its greatest level of protection from government intrusion on the home. That's why warrants are generally required and that's why warrant applications have to be carefully scrutinized to make sure that there is probable cause. In this case, the warrant was vague and it was ambiguous on many key points. Both parties requested a hearing to clarify that. And while I'll concede that the parties did not raise every ambiguity, there was at least one critical dispute. The court originally granted a hearing, which in practice is very routine, but before I get into the evidentiary hearing issue, I want to discuss probable cause because that really bears on the question of whether a hearing was needed in this case. So the affidavit in support of probable cause said four things, basically. First, it said there was an informant who told the officer that someone named Trey was selling methamphetamine from his apartment and he gave information about where the apartment was, what kind of cars this Trey drove, and he eventually identified Trey as Mr. Windom. Second thing the CI said was that they themselves had bought methamphetamine from Trey. There was no time frame attached to that statement. The CI also said that they had been in the apartment and seen guns and methamphetamine sometime in the past six months. Based on this information, the police set up a controlled buy, which took place outside the home. Again, no information on quantity. While Mr. Windom was under surveillance, leaving his apartment, there was nothing seen in his hands. Did the CI have any other information after the CI's buy of any contact with Mr. Windom? No, after the buy. In fact, Warren is somewhat indignant. Did they hang out with him at the apartment after that? No. In fact, the buy took place outside the apartment, so there was nothing after that. The CI went back to the police and the police took custody of the methamphetamine. The CI's buy was at the apartment, wasn't it? It's unclear whether there was one or two CIs. That's an ambiguity in the affidavit. But the first CI certainly said, I bought methamphetamine from Mr. Windom at his apartment. Did not state when that happened. I understand that. Did either one of the CIs, to make sure I have the answer correct, neither one of the CIs had any contact with Windom after the buys that they reported? No. Okay. Thank you. But during the controlled buy, Mr. Windom was surveilled leaving his apartment all the way until the drugs were transferred. Is that right? And again, it's somewhat unclear because it does say that the CI was under constant surveillance. It doesn't say Mr. Windom was under constant surveillance. It does say that he was seen leaving his apartment. Okay. Well, if he were under constant surveillance, that would mean he either had the drugs in the apartment or in his car. There's only two possibilities, right? Well, and then again, there's a third ambiguity in the warrant when there's this reference to someone named Anthony, and I don't know whether that's a typo or what. Everybody acknowledges that's a typo. I guess not everybody. Not me. Okay. But in any event... Well, give me that, and then we'll sort through this. Yes. But assume this, and just for purposes of the legal discussion, that Mr. Windom was under surveillance as he left the apartment and transferred the drugs. That would mean that the drugs had to either be in his apartment or in his car originally, right? Or both? Yeah. I mean, he certainly could have picked the drugs up from somebody else and had them in his pocket. If he were under surveillance, he couldn't have. Well, no. I mean, he could have, before he went to his apartment, he could have picked the drugs up from somebody else, had them in his pocket, left his home. Okay. But the drugs would have either been in his home or in his car. Or on his person. Or he didn't go somewhere else to get drugs. That's my understanding of the fact. And that would mean that that's a lot of probable cause that there are drugs in the home, wouldn't it? I guess I wouldn't concede that, no. Certainly, many people will get a call from somebody that says, I want some meth. The guy says, I don't have any. He goes and gets it from someone he knows. And then he gets it in his car. If that's so, and they lose track of him, and he's not seen, and that's a possibility, then I understand your point. But if the facts are otherwise, that they saw him leave the apartment, kept eyes on him until the drugs were transferred, isn't that by itself probable cause that there might be drugs in the home? Again, I wouldn't concede that, given that we don't have any information that Mr. Wyndham was a large-scale drug dealer. I mean, we have some very old information about once, one occasion, maybe, selling drugs from his apartment. And then we have many, many months later, we just have him coming to a meat location with drugs, which he could have gotten anywhere. Ms. Hartfield, would you at least concede this, and that is, it is more likely that the government would have Mr. Wyndham under surveillance, rather than the CI, either one of the CIs. Would you concede that? Yes, I mean, the Warren affidavit says they had him under surveillance as he left his apartment, and then they watched the CI, and that's what the affidavit says. Oh, okay, I thought you were saying you couldn't tell whether it was the CI or the Mr. Wyndham that was under surveillance. I misunderstood you then. I think they both were under surveillance. There were probably two teams, is the way it sounds like. As long as Mr. Wyndham was under surveillance, that's all that counts. Except that it's not clear whether the surveillance just ended after they watched him go out of his apartment. That's not clear from the affidavit. It just says that he was observed leaving his apartment, and then it says he was observed driving to the agreed location. It says members of the Denver Police Narcotics Unit observed the CI meet with Samuel. Prior to being sent to that location, the CI was searched, and the CI did not have any other money or narcotics in their possession. Surveillance detectives kept a constant view of the CI during the operation. So it doesn't say they kept a constant view of Mr. Wyndham, but that's yet another ambiguity. It says they saw him leave the apartment, and they surveilled him after he left. Yes, that's what the affidavit says. But in any event, that was the sum total of what was in the warrant. The difficulty here is that it's impossible to tell whether the CI was in Mr. Wyndham's apartment on one occasion, saw meth and guns, and bought meth, or whether those were separate occasions. And that's relevant to determining whether that information was stale and whether it was refreshed by any ongoing activity. Under the case law, if you look at the Grant case, the Myers case, and the Bautista-Mesa case, those facts are important. Now, of course, no case has the exact same set of facts, but I'd say this case looks more like Grant, it looks more like Bautista-Mesa, and it looks more like Myers than it looks like the cases, the government sites where you've got multiple sales, you've got government surveillance, you've got trash poles showing baggies. We have none of that here. But the fact that we don't know how many sales there were to the CI is why we needed a hearing. The pleadings showed a factual dispute. Both parties requested one, and the court reversed itself and decided not to have a hearing. There were many ambiguities in this affidavit. We don't know. There's a stray reference to Anthony. We don't know whether that's a third party who was a middleman or whether Mr. Wyndham was the middleman. We don't know when the sale to the CI took place. We don't know what kind of quantities we're looking at. And I think, again, that's much more relevant to whether there is likely to be drugs in the apartment, knowing the quantity of sales, knowing how frequent they are. All of those things just are not clear from this affidavit. So in conclusion, the affidavit was simply too vague. It was too ambiguous to establish probable cause. If that was apparent on its face, the good faith exception does not apply in cases where it's apparent on its face, if there's no probable cause. And for that reason, I'd ask that the court reverse. And I'll reserve my remaining time unless the court has further questions. May it please the court, Elizabeth Ford Malani on behalf of the United States. The district court did not err in declining to hold a hearing on Mr. Wyndham's motion to suppress the sale to the CI.  The dispute of facts he cites on appeal are not material to probable cause. With respect to probable cause, the affidavit detailed timely allegations from a reliable source that connected Mr. Wyndham's drug activity to his apartment. The warrant was properly issued. And even if this court disagrees, the warrant was not so lacking in indicia of probable cause to render reliance on it objectively unreasonable. Thus, the good faith exception to the exclusionary rule applies in this court to affirm. I'd like to start with probable cause. While this court need not even decide this question, it is intertwined with the good faith analysis and why a hearing wasn't required. Here, the timeliness and reliability of the affidavit's allegations established a fair probability that drugs would be found in Mr. Wyndham's apartment. Starting with timeliness, I think that this is a big dispute in the briefing. The affidavit set forth a substantial basis to believe that Mr. Wyndham was engaged in an ongoing criminal activity. And evidence of a longstanding pattern of criminal activity means it's less likely that the drug activity stopped in a short time. So there are a couple temporal points in the affidavit worth highlighting, some of which opposing counsel discussed. First, the CI told Detective Vance that someone named Trey was selling methamphetamine from his apartment. Now, the ordinary, common sense, non-technical meaning of was selling is that this is continuous and ongoing, not a finite point in the past tense. The CI explained to the Detective Vance that they had purchased drugs in the past from Mr. Wyndham's apartment. During the past month, six months, the informant had seen drugs inside of Mr. Wyndham's apartment. And, of course, the controlled buy happened at most four days before the warrant was signed in this case. Putting those all together, they create a fair probability that this sort of drug activity that Mr. Wyndham was engaging in was ongoing and continuous. So the affidavit was not stale, and the allegations were timely. Turning to reliability, the affidavit's allegations were reliable, considering the informant's basis of knowledge and veracity. With respect to reliability, Detective Vance detailed in the affidavit that he had worked with this CI in the past, had not known this CI to ever provide misleading or false information to law enforcement, and I think twice or three times described this particular CI as previously reliable. Now, I think a fair reading of the affidavit is that there was only one CI in this case. But even if there were two, even if there were two, Detective Vance described how both were previously reliable. And while Detective Vance didn't go into as great of detail with regard to, let's call the second, the controlled buy CI, the officers were able to verify what that CI told them because they watched the controlled buy occur. So I think that it's, even if there are two CIs, which I don't think is a common sense reading of the affidavit, but even if that's the case, they were reliable here. And I also want to point out, with regard to reliability, it's not a rigid analysis. You know, there's different factors, these different factors that the court weighs, and a deficiency on one may be supplemented by another. And I think the fact that the court watched this, or that the surveillance detectives watched this controlled buy occur, as well as corroborated a lot of information that the CI provided, albeit innocent, this really bolsters the reliability of the allegations here. And on the nexus point, I do want to point out that the nexus aspect of probable cause, it's not stringent. It doesn't require hard evidence or personal observations. And, in fact, this court in Bigelow talked about how that additional evidence required for the nexus can be established by the common sense inference that a magistrate may make that drug dealers keep drugs at their home. Of course, this inference was corroborated by the fact that the CI told Detective Vance he bought methamphetamine from Mr. Wyndham's apartment, he saw methamphetamine in his apartment, and also the controlled buy, which Mr. Wyndham was seen exiting his apartment, as you pointed out, Judge Phillips, just before this occurred. And I don't think it's entirely unclear. Ms. Maloney, I picked up from Judge Phillips that you can only be certain that the drugs from the controlled buy were in either the apartment or the car. Is that correct? I think that's fair. Does that matter? I don't think so. I would point out at the outset that probable cause deals in probabilities, not certainties. All right. But you're 50-50. Don't you need to go to 51-49? Yes. I think the rest of the affidavit gets us far over 51. To the apartment. To the apartment, yes. And that's because the CI said that Mr. Wyndham was selling drugs from his apartment. He saw drugs in his apartment. He purchased drugs. Is that information stale? I don't think so. I think that the combination of the fact that those allegations were refreshed by the controlled buy to show that this activity was still ongoing. Yeah, but what if he just, I mean, it seems like he had to show by 51-49 that he switched his place of business from his domicile to his automobile. So, I think that the district court pointed out, and it's an appropriate point that this requirement, the issuing court need not reject every other place where the drugs could be. But I do think we get over 51% given all of the informant's allegations plus that common sense inference that drug dealers keep drugs at their homes. So, I think that we certainly satisfy the nexus requirement with all of this together in considering. Let me ask you this. Would the inevitable discovery concept apply even if I disagree with you? The inevitable, if there was no warrant at all? Well, concept. I guess not actually the concept of the doctrine. The admin in his car, and it doesn't really matter because they would have gotten their warrant and they would have searched the car and the apartment. Yes, and in this case, actually, they did search the car too. And drugs were not found in the car. It was my memory of the record. So, I guess in that regard, they wouldn't have been inevitably discovered in the car. All right. Never mind. But again, I think that we certainly get over that 51, the 50 and above in this case for the nexus. So, you accept the probable cause is 51% or more? Not necessarily, Your Honor. I was just necessarily talking about Judge Murphy's example. But no, I think that we deal, it's a fair probability. And I would be hesitant to put a number on that. But I think fair probability that drugs would be found in Mr. Windham's apartment based on, I think we have far more than a fair probability, but definitely at a base level. So, for these three reasons, the reliability, the nexus requirement, and the fact that this was, the affidavit didn't provide stale information, I think probable cause was satisfied here and the warrant was properly issued. But even if it wasn't, I think that the fact that the warrant was issued leads to the good faith exception to the exclusionary rule. And I think that this court may decide this case on the good faith exception alone without untangling the probable cause question. But again, there are, of course, there's overlap. The fact that there was a signed affidavit in this case created a presumption of good faith. And Mr. Windham has not overcome that presumption. The affidavit relied on far more than suspicions, beliefs, and mere conclusions. It set forth these detailed allegations from the CI that controlled by a card. There was a link to Mr. Windham's apartment. And all of those, in this case, the exception to the good faith exception that Mr. Windham relies upon is that the affidavit here was so lacking in indicia of probable cause that reliance on it is just not reasonable. And that's not the case here. For the reasons that we've talked about, there is an objectively reasonable good faith argument that this conduct was ongoing, that Mr. Windham would have drugs in his apartment, and that the informant in this case was reliable. Unless the court has any further questions on probable cause and good faith, I'd like to briefly address the hearing, which is all related in this as well. The district court did not abuse its discretion in failing to hold a hearing on Mr. Windham's motion to suppress. The factual disputes that he identifies on appeal were not material to the probable cause determination. I will point out that an affidavit is judged based on what it contains. And while more facts could certainly have provided more details, they did not mean that those absence of details stripped this affidavit of probable cause. For instance, when the confidential informant bought drugs from Mr. Windham before the controlled buy, while that detail would have been helpful, we have an outer limit on when this was occurring, that within the past six months he had seen drugs in Mr. Windham's apartment. So we have sort of a date range. Would more specificity have been better? Maybe. But that doesn't mean that this was material to probable cause. So a hearing wasn't required to resolve that dispute. I thought the issue on the hearing was whether or not the fact disputes had been raised in the motion. And because they were not, the district court had no need to have a hearing. I think, well, I think that those are sort of two sides of the same coin, Your Honor. So first, Mr. Windham did not lay out in his motion to suppress these factual disputes that needed to be resolved, that he does on appeal. This bullet list that he identifies in the opening. Why isn't that the end? Why do we need two sides of a coin? I think that that can certainly be the way that this court resolves this case, that it was not sufficiently presented to the district court. But even if this court disagrees, I think that the actual determination was proper. So I would point the court to its, the Chavez-Marquez case, which is cited in the government's brief, talks about, to warrant an evidentiary hearing, the motion to suppress must raise factual allegations that are sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact go into the validity of the search warrant issue. I think that that just didn't happen in this case. I do want to refer to, nor was a hearing required to resolve the identity of Anthony. The context of the affidavit suggests this was a typo. And it's worth pointing out in the motion to suppress below and in the opening and reply brief on appeal, Mr. Windham doesn't appear to argue that this was a case of mistaken identity. Moreover, separate from the idiosyncratic reference to Anthony, three different times the affidavit said that the CI purchased drugs from Mr. Windham. So, again, probable cause deals in probabilities, not certainties. And those three references, that Mr. Windham sold the CI methamphetamine, establishes that standard. If I can answer any other further questions from the court. For these reasons, we respectfully ask this court to affirm the district court's order denying the motion to suppress. Thank you. I just want to address two points. One, it seems from the questioning that there is a movement towards holding that simply because somebody leaves their apartment and shows up at a drug deal, that that gives probable cause to search their home. I think that's a dangerous precedent and I think that's not what the case law says. I think that the Mora case, which is the most recent, I believe on this issue, says it has to be a case-by-case basis. We need to look at the totality of the circumstances here. There are cases where somebody has multiple sales, where there's evidence that there's large-scale trafficking going on, where certainly the court could infer that there are going to be drugs in the home. But the mere fact that somebody leaves their home and shows up at a drug deal does not seem, under this court's precedent, to give probable cause to search the home. A search of the home is extremely intrusive. When police go to search a home with a warrant, they turn over everything. They pull out the drawers. They pull out the cupboards. That's a very big intrusion just based on someone leaving their apartment and showing up at a drug meet. The second thing I want to address is just the issue on the hearing. The parties did identify one dispute, and it was an important dispute, and that is whether the CI had been in the apartment more than once. There was this dispute about when the CI supposedly said that Mr. Windham was selling methamphetamine in his apartment. Government contends that shows ongoing activity. I would argue that it could very well mean just a single instance. I think in common vernacular, people use the term something but something was selling when they're referring to a single occasion about which they know about. It is not clear from this affidavit, and the government identified that as a dispute in their response to Mr. Windham's motion to suppress. So for that reason, the court was correct in originally ordering a hearing. The court reversed itself based, it appears from the record, on the fact that Mr. Windham wanted to have his hearing in person. So those are the only two points I want to clarify. If the court has any further questions, I will answer them. Otherwise, I would just ask the court to reverse Mr. Windham's convictions. Thank you, Your Honor. Thank you. The case is submitted and counsel are excused. Thank you for your arguments.